25 A.3d 181

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Michael Robert CARITHERS, Jr.**

**Misc. Docket No. AG 18, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 18, 2011.

Reconsideration Denied Aug. 11, 2011.

Marianne J. Lee, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Edward Smith, Jr., Esquire, Baltimore, MD, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

Michael R. Carithers, Jr., Respondent, was admitted to the Bar of this Court on September 26, 2006. On April 30, 2010, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Respondent, charging several violations of the Maryland Rules of Professional Conduct ("MRPC") including 1.15(a) (Safekeeping Property)[2] and 8.4(a)-(d) (Misconduct),[3] stemming from the deposit of unearned fees into his personal account. In accordance with Maryland Rule 16–752(a),[4] we referred the matter

---

1. Maryland Rule 16–751 provides in relevant part:
 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.15(a) provides:
 A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

3. Rule 8.4 provides in relevant part:
 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice.

4. Maryland Rule 16–752(a) provides:

to the Honorable Kendra Y. Ausby, of the Circuit Court for Baltimore City, to conduct an evidentiary hearing and to render findings of fact and recommend conclusions of law. In response to our request, Judge Ausby held an evidentiary hearing on January 5 and 6, 2010, and, pursuant to Rule 16–757(c),[5] rendered the following findings of fact and conclusions of law.

## Findings of Fact

[Respondent] earned his J.D. at the University of Michigan Law School and is admitted to practice law in the District of Columbia, Michigan and Maryland. In 1991, after law school, [Respondent] was an associate with the firm Ross, Dixon & Masbeck located in the District of Columbia. In 1993, [Respondent] found another position as an associate with the firm Galon, Carash, Morris & Garfinkel. In 1999, Respondent took a position with the Office of the General Counsel at Ford Motor Company in Dearborn, Michigan. In 2000, [Respondent] was an associate at the law firm of Collier, Shannon and Scott located in the District of Columbia. In March of 2003, Respondent was "of counsel" with the firm of Kevin Marino, P.C. located in Newark, New Jersey. From June of 2003 through September of 2003, [Respondent] was unemployed. From Septem-

---

(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

5. Maryland Rule 16–757(c) provides:
(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

ber of 2003 until October of 2003, Respondent took a position with the City Solicitor's Office in Baltimore, Maryland. From October of 2003 through May of 2005, [Respondent] was "of counsel" with the firm Greenberg Traurig, LLP located in the District of Columbia.

During March of 2003 through May of 2003, [Respondent] held an "of counsel" position while working at the firm of Kevin Marino, P.C. The position "of counsel" was not defined. [Respondent] was paid by Mr. Marino and handled both Mr. Marino's cases and cases of his own. [Respondent] handled his own clients independently and did not enter his own clients into the Kevin Marino, P.C. client database.

During October of 2003 through May of 2005, [Respondent] held an "of counsel" position while working at the firm of Greenberg Traurig, LLP. [Respondent] maintained his own clients and handled cases for Greenberg Traurig, LLP. [Respondent] did not enter his own clients into the Greenberg Traurig, LLP client database.

In August of 2005, the Respondent was hired at the [Baltimore-based] firm of Brown & Sheehan, LLP (hereinafter "B & S"). Michael Alan Brown, Esquire (hereinafter "Mr. Brown") and David Sheehan, Esquire (hereinafter "Mr. Sheehan") were the only two equity partners at the firm of B & S. Mr. Brown was the managing partner of the firm and was responsible for generating work throughout the firm, maintaining day-to-day activities, and managing the employees at B & S. Mr. Sheehan was the administrative managing partner of the firm and was responsible for bookkeeping and administration of the firm with respect to purchasing, billing, collecting and managing the accounts. In 2005, the firm of B & S had approximately fourteen (14) to sixteen (16) attorneys, consisting of equity and non-equity partners, of counsel attorneys, and associates. The attorneys at B & S were required to bill one-thousand eight-hundred (1,800) billable hours per year.

[Respondent] was hired by Mr. Brown as "of counsel" at the firm of B & S. There was no written contract regarding

the Respondent's employment at B & S, including any written contracts or memoranda regarding the Respondent's "of counsel" position at the firm. The Respondent was hired as a full-time employee of B & S, with a full-time salary of approximately ninety thousand dollars per year ($90,000), including vacation and sick days, and various benefits including health, disability, life insurance, malpractice insurance, and a 401k plan. This was the same arrangement for associates at B & S. However, during the Respondent's interview with B & S, it was determined that considering the Respondent's experience, the Respondent would hold an "of counsel" designation at the firm in order to denote a more senior status than an associate. There was no agreement between the Respondent and Mr. Brown or Mr. Sheehan, that Respondent could maintain a side practice. On December 13, 2007, the Respondent signed an acknowledgment form, indicating that he had received the B & S personnel handbook.

The Respondent was an attorney with B & S from August of 2005 through June of 2008. During the Respondent's employment with B & S, he was a panel attorney under the Criminal Justice Act (CJA) for the United States District Court for the District of Maryland. After the Respondent completed a case for the CJA, the Respondent would submit a voucher with timesheets that would include the number of hours multiplied by the CJA established hourly rate. The voucher would be submitted to the coordinator of the CJA and after a period of 30 to 90 days, the Respondent would receive a check for both legal fees and out of pocket expenses. During Respondent's employment at B & S, the Respondent only received two checks from the CJA. The Respondent deposited the two checks into his personal checking account, then issued cashier's checks to B & S for the original amount, less his out of pocket expenses. The first CJA check was in the amount of two-thousand seven-hundred and five dollars and twenty cents ($2,705.20), of that amount, the Respondent took out sixteen dollars and eighty cents ($16.80) for his out of pocket expenses. The

second CJA check was in the amount of six-thousand seven-hundred and six dollars ($6,706.00), of that amount, the Respondent took out two-hundred and thirty-two dollars ($232.00) for his out of pocket expenses. The Respondent deposited the checks in order to receive his out of pocket expenses because it was difficult to receive such reimbursements from B & S in a reasonably timely manner.

The Respondent admits that he had a side practice while employed at B & S. The Respondent deposited checks received from clients in his side practice into his personal account. The Respondent did not maintain a trust account for his side practice and all payments were deposited into his personal account. The Respondent did not maintain separate malpractice insurance and did not create a separate entity for his side practice. Further, the Respondent did not initially report any of the income received from his side practice from 2005 through 2008 to the Internal Revenue Service (IRS). However, the Respondent had to file amended returns regarding taxable income received from his side practice.

During the Respondent's employment at B & S, the Respondent opened a number of cases on his own without entering them into the B & S client database, while receiving payments using the B & S billing statements and using B & S resources. The Respondent acknowledged that he used B & S retainer agreements, B & S letterheads and stationary for clients for his side practice. The Respondent acknowledged that he represented clients of his side practice during the hours that he was at B & S. Further, the Respondent retained several clients that were previously B & S clients, but had been terminated by B & S for failing to pay their legal fees. The following are examples of the Respondent's side practice while at B & S:

Representation of Patsy Stewart: The Respondent represented Patsy Stewart, who was entered into the B & S client database and had executed a B & S retainer agreement dated September 27, 2007. The Respondent fabricated a billing statement in order for it to look similar to the B

& S billing statement form and sent Ms. Stewart a letter and billing statements using B & S letterhead. On September 27, 2007, the Respondent directly received an initial retainer of one-thousand dollars ($1,000.00) from Ms. Stewart and deposited the check into his personal account. However, the Respondent did not begin work on Ms. Stewart's matter until September 28, 2007. Further, the Respondent requested that Ms. Stewart forward all payment to Respondent's personal address.

Representation of Leona Victors: The Respondent represented Leona Victors as a side practice client after B & S terminated Ms. Victors as a client for failing to pay B & S legal fees. Ms. Victors was entered into the B & S client database and had executed a B & S retainer agreement on B & S letterhead. The Respondent entered billable hours for work done on Ms. Victors' case into the B & S billing system. However, the Respondent directly received payments from Ms. Victors and deposited the checks into his personal account. The Respondent had regular meetings with Ms. Victors outside of the B & S office, specifically at McDonald's restaurant and at a hotel.

Representation of John Paul Lennon: The Respondent represented John Paul Lennon as part of his side practice. Mr. Lennon was entered into the B & S client database and had executed a B & S retainer agreement on B & S letterhead. The Respondent entered billable hours for work done on Mr. Lennon's case into the B & S billing system. On September 5, 2007, the Respondent deposited the initial one-thousand dollar retainer ($1,000.00) from Mr. Lennon into his personal account. However, in the B & S billing system the Respondent only billed one-hundred and twenty-five dollars ($125.00) for a 'meeting with client' on September 4, 2007. Further, the Respondent directly received payments from Mr. Lennon and deposited the checks into his personal account. The Respondent had regular meetings with Mr. Lennon only outside the B & S office, specifically at Le Madeline's Restaurant.

On June 23, 2008, Mr. Brown and Mr. Sheehan discovered that the Respondent had personally negotiated checks from clients and deposited the checks into the Respondent's personal account and had maintained a side practice separate from B & S. On the same day, [Respondent's] employment with B & S was terminated via email from Mr. Brown to [Respondent].

The Respondent did not disclose, either in writing or orally, to anyone at B & S that he was retaining clients on his own, outside of the firm, or that he was regularly depositing client fees into his personal account, while being employed as a full-time salary attorney at B & S. The Respondent never requested permission from B & S to retain clients for himself, maintain an outside practice for himself or retain payments for himself, even though he had multiple opportunities to discuss the matter with Mr. Brown or Mr. Sheehan. Even after Mr. Sheehan informed the Respondent to withdraw from the cases where clients had failed to pay B & S legal fees, the Respondent 'decided to keep [the clients] as a side practice to avoid withdrawing from the cases.' Further, the Respondent admitted that he knew there was going to be a problem if he informed Mr. Brown and Mr. Sheehan that he was not withdrawing from the cases and instead continued to represent the clients as a side practice.

The Respondent was never given authorization by either Mr. Brown or Mr. Sheehan to retain his own clients or have a side practice during his employment with B & S. The Respondent was not given authorization to use B & S letterhead, billing statements, or resources for the purposes of retaining his own clients. Furthermore, the Respondent was not given authorization to retain his own clients and accept payments from those clients directly for himself.

## Conclusions of Law

Judge Ausby found by clear and convincing evidence that Respondent's acts and omissions constituted a violation of Rules 8.4(a)-(d) and 1.15(a) of the MRPC. The hearing judge

also found that Respondent violated the Maryland Business Occupations and Professions Art. Sec. 10–304(a).[6]

As to MRPC 1.15(a), safekeeping of client funds, the hearing judge made the following conclusions of law:

The failure to establish a proper trust account and the failure to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property" is a violation of Rule 1.15(a) of the MRPC. MRPC 1.15(a); *see Attorney Grievance v. Mitchell,* 386 Md. 386, 872 A.2d 720 (2005). Further, in accordance with the Maryland Business Occupations and Professions Code § 10–304, "a lawyer expeditiously shall deposit trust money into an attorney trust account."

In this case, the Respondent never maintained a trust account while representing clients at his side practice. In addition, the Respondent deposited the initial retainers for Ms. Stewart and Mr. Lennon into his personal account prior to earning all of the legal fees. There is clear and convincing evidence that the Respondent violated Rule 1.15(a) of the MRPC and the Maryland Business Occupations and Professions Code § 10–304(a) by failing to place the initial retainers of clients into a separate trust account until such fees were earned by the Respondent. *See Attorney Grievance v. Thomas,* 409 Md. 121, 165, 973 A.2d 185 (2009) (finding that Respondent's placement of the entire retainer fee from the client including at least a portion not yet earned into his general operating account violates § 10–304(a) and MRPC 1.15(a)).

As to MRPC 8.4(b), engaging in criminal conduct that reflects adversely on a lawyer's honesty, trustworthiness and fitness as a lawyer, the hearing judge made the following conclusions of law:

---

**6.** Maryland Business Occupations and Professions Art. § 10–304(a) provides:

(a) *General requirement*—Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

Criminal prosecution is not required to find a violation of MRPC 8.4(b) and its absence does not necessarily mean the Rule has not been violated. *Attorney Grievance v. Breschi,* 340 Md. 590, 667 A.2d 659 (1995). [The Rule requires] . . . clear and convincing evidence of conduct that constitutes a commission of the criminal offense. . . . *Attorney Grievance v. Proctor,* 309 Md. 412, 418, 524 A.2d 773 (1987). Further, the court must also find that the criminal conduct adversely reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. MRPC 8.4(b); *see Attorney Grievance v. Thompson,* 367 Md. 315, 324, 786 A.2d 763, 769 (2001).

The Respondent [is] alleged to have committed theft by accepting payments directly from clients and retaining clients outside of B & S. Theft is the "unauthorized control over property." MD.CODE ANN., CRIM. LAW ART. § 7–104(a). Unauthorized control over property means a person who willfully or knowingly obtains or exerts unauthorized control over property by either intending to deprive the owner of property, willfully or knowingly using, concealing or abandoning the property in a manner that deprives the owner of the property, or using, concealing or abandoning the property knowing the use, concealment or abandonment probably will deprive the owner of the property. MD.CODE ANN., CRIM. LAW ART. § 7–104(a)(1)–(a)(3).

There is clear and convincing evidence that the Respondent deposited payments from clients into his personal account. Several of the clients were previously B & S clients that had been terminated because of outstanding balances to B & S. The Respondent continued to represent these clients despite Mr. Sheehan's orders to terminate the attorney-client relationship. The payments received directly by the Respondent represented legal fees still owed to B & S. The Respondent was never authorized to receive and deposit any payments directly from clients. The Respondent willingly and knowingly deposited checks from previous B & S clients that had outstanding balances with B & S. There is clear and convincing evidence that the Respondent

willfully exerted control over checks and intended to deprive B & S of the checks. Theft is criminal conduct that explicitly and adversely reflects on a lawyer's honesty, trustworthiness, and fitness as a lawyer. Therefore, there is clear and convincing evidence that the Respondent has violated Rule 8.4(b) of the MRPC by engaging in criminal conduct that reflects adversely on his honesty, trustworthiness and fitness as a lawyer.

As to MRPC 8.4(c), engaging in conduct involving dishonesty, fraud, deceit and misappropriation, the hearing judge made the following conclusions of law:

The misappropriation of client's funds and third party funds is considered conduct that constitutes "moral turpitude" and is considered an act of deceit and dishonesty, which is in violation or Rule 8.4(c) of the MRPC. *See Attorney Grievance v. Moore*, 301 Md. 169, 482 A.2d 497 (1984); *Attorney Grievance v. Ezrin*, 312 Md. 603, 541 A.2d 966 (1988).

While employed as an attorney at B & S, the Respondent deposited retainers and payments from clients into his personal account. The Respondent was never authorized to retain former clients of B & S and continue representing them as part of his side practice. The Respondent was never authorized to receive any payments directly from clients to deposit into his personal account. Moreover, the Respondent was never authorized to use B & S resources in order to maintain his side practice. The Respondent's intentional misconduct reflects adversely on his honesty, trustworthiness and fitness as a lawyer. There is clear and convincing evidence that the Respondent has violated Rule 8.4(c) of the MRPC by misappropriating payments received from his clients that represented [legal fees still owed to B & S] and using B & S resources to maintain his side practice. Furthermore, there is clear and convincing evidence that the Respondent violated Rule 8.4(c) of the MRPC by depositing Ms. Stewart's and Mr. Lennon's initial retainers into his personal account prior to earning the legal fees. *See Attorney Grievance v. Moore*, 301 Md. 169, 482

A.2d 497 (1984); *Attorney Grievance v. Ezrin,* 312 Md. 603, 541 A.2d 966 (1988).

As to MRPC 8.4(d), involving conduct that was prejudicial to the administration of justice, the hearing judge made the following conclusions of law:

The Court of Appeals of Maryland has found that conduct constituting the misappropriation of client or third party funds to be "prejudicial to the administration of justice" in violation of Rule 8.4(d) of the MRPC. *See Attorney Grievance v. Snyder,* 368 Md. 242, 260–61, 793 A.2d 515, 525–26 (2002); *Attorney Grievance v. Hollis,* 347 Md. 547, 702 A.2d 223 (1997). There is clear and convincing evidence that the Respondent has violated Rule 8.4(d) of the MRPC by misappropriating payments received from clients that represented B & S' fees.

Finally, as to MRPC 8.4(a), the hearing judge determined that:

When an attorney has violated several Maryland Rules of Professional Conduct, he necessarily violates 8.4(a) of the MRPC as well, which [provides that it is] professional misconduct [for] a lawyer [to] violate[ ] or attempt[ ] to violate the Maryland Rules of Professional Conduct. *Attorney Grievance v. Foltz,* 411 Md. 359, 983 A.2d 434 (2009).

There is clear and convincing evidence that Respondent has violated Rules 8.4(b)-(d) and 1.15(a) of the MRPC by committing professional misconduct.... Therefore, there is clear and convincing evidence that the Respondent has violated Rule 8.4(a) of the MRPC.

The hearing judge noted several mitigating circumstances. Judge Ausby found that Respondent cooperated with the Attorney Grievance Commission's investigation by submitting a letter to Bar Counsel describing his billing practices and use of B & S resources. Respondent also informed Bar Counsel that he signed an agreement with B & S to pay B & S an amount representing the fees that B & S clients had paid directly to Respondent, while Respondent was employed at B & S. The hearing judge further found that Respondent had

not engaged in any previous known acts of misconduct, and that his prompt issuance of checks to B & S for CJA legal fees indicated that he did not intend to deceive B & S, with regards to the CJA cases.

The hearing judge also noted several aggravating circumstances. Judge Ausby found that Respondent had intentionally deceived B & S by maintaining a side practice while a full-time salaried employee of B & S. The hearing judge found that Respondent had represented and personally accepted payments from terminated B & S clients after B & S expressly prohibited such representation. In addition, the hearing judge found that Respondent failed to disclose his side practice to B & S, and used B & S resources to maintain his side practice. According to the hearing judge's findings, Respondent intentionally deceived his side practice clients by using B & S letterhead, stationary, retainer agreements and billing statements, and thereby purported to represent these clients as an attorney of B & S. The hearing judge stated that "Respondent's motives were dishonest because he purposefully and intentionally did not disclose to anyone at B & S that he was accepting payments directly from clients and retaining clients outside of B & S to supplement his full-time salary at B & S." In addition, the hearing judge noted that, even if Respondent had been authorized by B & S to maintain a side practice, Respondent still failed to maintain a trust account for his side practice clients. Finally, the hearing judge pointed out that, "Respondent has been practicing law since 1991 and should be considered to have substantial experience in the practice of law."

## DISCUSSION

### Standard of Review

■ This Court has original jurisdiction over attorney discipline proceedings, and is required to conduct an independent review of the record. *Attorney Grievance v. Zuckerman,* 403 Md. 695, 709, 944 A.2d 525, 534 (2008); *Attorney Grievance v. Nussbaum,* 401 Md. 612, 632, 934 A.2d 1, 12 (2007);

*Attorney Grievance v. Lawson,* 401 Md. 536, 571–72, 933 A.2d 842, 863 (2007). We accept the hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance v. Dunietz,* 368 Md. 419, 427–28, 795 A.2d 706, 711 (2002) (noting that a hearing judge's findings of fact are *prima facie* correct and will not be disturbed unless clearly erroneous). We review the hearing judge's conclusions of law *de novo.* Md. Rule 16–759(b)[7]; *Attorney Grievance v. Kreamer,* 404 Md. 282, 292, 946 A.2d 500, 506 (2008); *Attorney Grievance v. Parsons,* 404 Md. 175, 184, 946 A.2d 437, 443 (2008).

### Exceptions to the Findings of Fact

Petitioner did not file exceptions to the hearing judge's findings of fact or conclusions of law, however, Respondent did file several exceptions. Respondent's written exceptions to the hearing judge's findings of fact, and our responses, are set forth below.

*Exception 1:* Respondent contends that the record does not support the hearing judge's finding that Respondent's medical and other employment benefits were essentially the same as those given to associates at B & S. Respondent further states, "if the implication that [his] position as 'Of Counsel' at B & S was effectively no different than an associate, this is not true. According to Respondent, it is more accurate to say that 'This was the same arrangement for all employees at the firm except for Michael Brown and David Sheehan, including all other of-counsels, associates and non-equity partners.' "

The hearing judge found that Respondent and B & S had agreed that "Respondent would hold an 'of counsel' designation at the firm in order to denote a more senior status than an associate." The hearing judge therefore understood that Respondent's Of Counsel position was different from an associate position, and credited evidence to this effect. The hear-

---

7. Md. Rule 16–759(b) provides in relevant part:
 (1) **Conclusions of Law.** The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

ing judge considered unrefuted testimony that Respondent received employment benefits while Of Counsel to B & S. In addition, Respondent testified during his hearing that he understood his Of Counsel relationship with B & S to be "the same status that [he] had at Greenberg Trowick's D.C. office," where, according to his own testimony during the hearing, Respondent received employment benefits. Respondent's testimony supports the hearing judge's finding of fact. Therefore, the hearing judge's finding is not clearly erroneous, and we overrule Respondent's first exception.

*Exception 2:* Respondent excepts to the hearing judge's finding that "Respondent signed an acknowledgment form, indicating that he had received the B & S personnel handbook." In his written exception to this finding, Respondent states that, "[i]t is undisputed in the record that the handbook contained no prohibition against maintaining a side practice or definition of what an 'of counsel' can and cannot do."

The hearing judge did not find, nor did she infer, that the personnel handbook contained a prohibition against maintaining a side practice or a definition of the Of Counsel relationship. Respondent's own testimony during the hearing supports the hearing judge's finding that Respondent signed a form acknowledging his receipt of the personnel handbook. In addition, Respondent testified that he did not read the personnel handbook. Respondent's second exception does not challenge any findings of fact or conclusions of law, but merely refers to an inference that the hearing judge did not make. The fact that the employee handbook did not contain language expressly prohibiting an attorney from maintaining a side practice is not dispositive of the issues in this case. There was evidence before the hearing judge that B & S did not authorize Respondent to hold a side practice of law while in the employ of B & S. Accordingly, we overrule the exception.

*Exceptions 3, 6, 8 & 10:* Respondent's third exception is to the hearing judge's general finding that Respondent used B & S retainer agreements, letterhead and stationary in his representation of his side practice clients. Respondent's sixth,

eighth and tenth exceptions are to the hearing judge's specific findings that Respondent used such materials in his representation of Ms. Stewart, Ms. Victors and Mr. Lennon.

Respondent admits that he used B & S retainer agreements, letterhead and stationary in his representation of these clients as part of his side practice. Respondent contends, however, that he used his own language, and not the standard B & S retainer agreement language. Respondent admits, however, that there is nothing in the record to support this distinction.

The hearing judge based her findings on both oral testimony and Petitioner's Exhibit No. 9, which includes several communications between Respondent and one of his side practice clients, Ms. Stewart. The client communications were on B & S letterhead and signed by Respondent. The communications did not state whether Respondent was acting on behalf of B & S or on his own behalf, nor did the communications indicate that Respondent was Of Counsel to B & S. In his testimony during the hearing, Respondent neither explained why he used B & S stationary for his side practice, nor did he assert that there was any distinction between B & S retainer agreements and retainer agreements for his side practice, written on B & S stationary.

This Court has held previously that a material omission of fact by an attorney in client communications constitutes a violation of Rules 7.1[8] and 7.5[9] of the MRPC. *Attorney Grievance v. Brown,* 353 Md. 271, 290, 725 A.2d 1069, 1078 (1999) (finding that an attorney who included his co-counsel's

---

**8.** MRPC Rule 7.1 provides in relevant part:
> A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
> (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading. . . .

**9.** MRPC Rule 7.5 provides in relevant part:
> (a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1 . . . .

name on firm letterhead, without disclosing co-counsel's juris-
dictional limitations, violated Rules 7.5 and 7.1 of the MRPC).
Similarly, Respondent's use of B & S materials supports the
hearing judge's conclusion that Respondent intentionally de-
ceived his clients and B & S. Respondent's assertions do not
persuade us that the hearing judge's findings were clearly
erroneous. Therefore, we overrule Respondent's third, sixth,
eighth and tenth exceptions.

*Exception 4:* Respondent admits that he performed work
for clients as a result of his side practice during the hours that
he was working at B & S, but contends that, "[t]here is no
support in the record that such work for the Respondent's
clients during B & S hours impeded work for B & S clients."

The hearing judge did not find, nor do we consider, whether
Respondent's work for his side practice in fact impeded his
work for B & S. Judge Ausby's finding that Respondent
represented side practice clients during his B & S hours is
material to her analysis, and her conclusion that Respondent
violated the MRPC. It is not material to the case whether
Respondent's work for his side practice impeded his work for
B & S. We therefore overrule Respondent's fourth exception.

*Exception 5:* Respondent contends that the record does not
support the hearing judge's conclusion that some of the clients
Respondent represented in his side practice had been termi-
nated previously as clients by B & S. Respondent contends
that these clients had not been terminated by B & S, but were
never accepted by B & S as clients in the first place, due to
their inability to pay B & S rates.

The hearing judge's findings of fact were based on Respon-
dent's testimony during the hearing. While Respondent never
used the word "terminated" to refer to the clients, he clearly
stated that the clients in question had been entered into the B
& S billing system and had outstanding balances to B & S,
that Mr. Sheehan had told Respondent to withdraw from his
representation of those clients, and that Respondent continued
to represent the clients on his own, against Mr. Sheehan's
command. Respondent testified that,

"[i]n the Victors case she had made payments to Brown & Sheehan up until the end of December. . . . Then she went three months without making payments to Brown & Sheehan. So in March of 2008, approximately, in her case was when I decided I couldn't keep her on the Brown & Sheehan system with uncollected money for Brown & Sheehan. . . ."

Respondent further testified that,

"when I decided to keep [Ms. Victors and another B & S client] as a side practice to avoid from withdrawing the cases and I knew, or had been informed from David Sheehan, and withdrawing from . . . their cases and I decided to keep their cases, I knew there was going to be a problem in discussing them in terms of time. . . . I tried to get [Mr. Sheehan] to talk to [Ms. Victors and other clients] and what [Mr. Sheehan] said to me was that you need to withdraw from these cases."

In light of Respondent's testimony during the hearing, the hearing judge's finding that "Respondent retained several clients that were previously B & S clients, but had been terminated by B & S for failing to pay their legal fees," is not clearly erroneous. We therefore overrule Respondent's fifth exception.

*Exception 7:* Respondent excepts to the hearing judge's finding that Respondent did not begin work for Ms. Stewart until after Respondent deposited her first payment into his personal account.

Respondent also excepts to the hearing judge's finding that Respondent requested that his clients forward payment to his personal address, claiming instead that the address was a P.O. Box used for business.

The hearing judge referred to Petitioner's Exhibit No. 9 to support her conclusion that, "[o]n September 27, 2007, the Respondent directly received an initial retainer of one-thousand dollars ($1,000.00) from Ms. Stewart and deposited the check into his personal account. However, the Respondent did not begin work on Ms. Stewart's matter until September 28, 2007." Petitioner's Exhibit No. 9 contains a written affida-

vit signed by Respondent, stating that he deposited Ms. Stewart's initial retainer into his personal account on September 27, 2007, and began work on her case on September 28, 2007. The affidavit further states that Respondent requested that Ms. Stewart forward all payment to Respondent's personal address. Therefore, the hearing judge's findings with respect to Respondent's representation of Ms. Stewart are based on Respondent's signed affidavit and are not clearly erroneous. Accordingly, we overrule Respondent's seventh exception.

*Exception 9:* Respondent's ninth exception states, "[t]he [hearing judge] credited none of the undisputed evidence and testimony from the client herself that the Respondent worked on the Victors case before payment was made by Ms. Victors."

The hearing judge did not find that Respondent deposited payments received from Ms. Victors prior to earning the legal fees. In addition, any finding that Respondent did not engage in any type of misconduct during his representation of one client would not alter Judge Ausby's finding that Respondent engaged in misconduct during his representation of another client. Accordingly, we overrule Respondent's ninth exception.

*Exception 11:* Respondent's eleventh exception refers to the hearing judge's finding that, "in the B & S billing system the Respondent only billed one-hundred and twenty-five dollars ($125.00) for a 'meeting with client' on September 4, 2007." Respondent's eleventh exception states that, "[t]his evidence contradicts Respondent's testimony that he did substantial work for Mr. Lennon before his first payment and also contradicts Mr. Lennon's testimony. This contradiction in the evidence does not measure up to clear and convincing evidence."

Respondent did not demonstrate sufficiently that he had done substantial work for Mr. Lennon before he deposited the fees into his personal account. The hearing judge was not bound to adopt Respondent's testimony on this issue. The hearing judge concluded that Respondent reported only a

portion of his legal fees to B & S, and withheld the remainder for himself. "Consistent with the standard of review for factual findings in attorney discipline cases, we have iterated that the judge 'may elect to pick and choose which evidence to rely upon.'" *Attorney Grievance v. Harris,* 403 Md. 142, 158, 939 A.2d 732, 742 (2008) (quoting *Attorney Grievance v. Harris,* 371 Md. 510, 543, 810 A.2d 457, 477 (2002)). Respondent has not presented evidence to persuade us that the hearing judge's findings were clearly erroneous. Thus, we overrule Respondent's eleventh exception.

*Exception 12:* Respondent contends that B & S did not "discover" that Respondent was maintaining a side practice. According to Respondent, he kept his side practice files in his B & S office, where the files remained in plain sight. In Respondent's view, B & S could not be said to have "discovered" anything about Respondent's side practice, because he did not actively hide these files.

The hearing judge found that Respondent used his side practice to represent clients that B & S had specifically told him not to represent. In addition, Respondent used B & S resources for his own benefit without authorization. Respondent's lack of transparency in representing former B & S clients and using B & S resources constitutes clear and convincing evidence that he intended to deceive B & S. The possibility that B & S employees could have discovered Respondent's conduct by entering his office and examining his files does not rebut this evidence. Therefore, we overrule Respondent's twelfth exception.

*Exception 13:* Respondent contends that the hearing judge did not credit evidence that Respondent deposited two CJA checks into his personal account, and then promptly issued two checks to B & S as payment for the legal fees. Respondent contends that these checks were accepted and deposited by B & S without incident or complaint.

Contrary to Respondent's exception, the hearing judge did describe Respondent's practice of depositing the CJA checks, and issuing cashier's checks to B & S as payment for the legal

fees. The hearing judge pointed to this practice as an indication that Respondent did not intend to deceive B & S, or deprive B & S of these legal fees. We therefore overrule Respondent's thirteenth exception.

*Exception 14:* Respondent contends that B & S was aware of his side practice, because he notified B & S of his individual side practice clients through conflict check emails. Respondent testified that it was his practice to send emails containing his client's names to other B & S attorneys, so that the attorneys could avoid any potential conflicts of interest in client representations. Respondent testified that he included the names of his side practice clients in these emails, but never received a response from any B & S attorneys.

It has already been established and unrefuted that Respondent continued to represent clients that had been entered, at one time, into the B & S client database. Respondent has not presented any evidence that the extent to which he disclosed certain of his client representations to B & S actually gave notice to B & S that Respondent was maintaining a side practice. Furthermore, the hearing judge found by clear and convincing evidence that, while Respondent had several opportunities to expressly notify B & S that he was maintaining a side practice, he instead intentionally concealed his side practice from B & S. For example, Respondent testified that he had several conversations with Mr. Brown or Mr. Sheehan in which he expressed his interest in "me marketing." Respondent testified that he initially used this term in his interview to convey his desire to become a partner at B & S, but later discussed "me marketing" in reference to both his side practice and his interest in becoming a partner. Respondent never expressly disclosed his side practice to B & S, but instead omitted the word "partner" from some of his conversations about "me marketing." Respondent has not presented evidence that the hearing judge's findings of fact were clearly erroneous. Accordingly, we overrule Respondent's fourteenth exception.

## Exceptions to the Conclusions of Law

The hearing judge found that Respondent violated the Maryland Rules of Professional Conduct 8.4(a)-(d) and 1.15(a), as well as the Maryland Business Occupations and Professions Art. § 10–304(a). Respondent's written exceptions to the hearing judge's conclusions of law, and our responses, are set forth below.

### MRPC 1.15(a)

■ Respondent contends that he did not violate Rule 1.15(a) of the MRPC, because, "[w]hile it is true that [he] had no trust account, it is untrue that he took money that did not rightfully belong to him by virtue of his legal efforts." Respondent does not directly address the hearing judge's legal conclusions with regards to Rule 1.15(a), but instead asserts that his clients were satisfied with his services and made no complaints about Respondent's practices.

Rule 1.15(a) of the MRPC requires a lawyer to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Respondent testified during the hearing that he deposited client payments into his personal account. We therefore overrule Respondent's exception, and agree that Respondent violated Rule 1.15(a) of the MRPC.[10]

### MRPC 8.4(b)

■ Respondent asserts that he did not commit theft or any violation of Rule 8.4(b) of the MRPC. Respondent con-

---

**10.** Although the hearing judge found that Respondent's failure to establish and maintain an attorney trust account for the protection of client funds violated Rule 1.15(a), Judge Ausby also found that Respondent's conduct violated § 10–304 of the Maryland Business Occupations and Professions Code (requiring expeditious deposits of trust money into an attorney trust account). We acknowledge that Respondent was not charged explicitly with violation of § 10–304. That determination, however, that Respondent violated § 10–304, is not necessary to our disposition of this case. *See Attorney Grievance v. Sapero,* 400 Md. 461, 486–87, 929 A.2d 483, 498 (2007) (declining to find a violation of a rule that the attorney was not charged to have violated).

tends further that the fees he collected from former B & S clients represented payment for his own work, not outstanding B & S legal fees, that his actions did not constitute theft, because B & S had already stated that it would not represent the clients in question, and that the clients in question were not terminated because of outstanding balances owed to B & S.

The hearing judge found that Respondent violated Rule 8.4(b) of the MRPC, because he committed theft by accepting payments directly from clients and retaining clients outside of B & S. A person commits theft when he or she willfully or knowingly exerts control over property without authorization, while possessing the requisite criminal intent. MD.CODE ANN., CRIM. LAW ART. § 7–104(a).[11]

Respondent was never authorized to, and was expressly prohibited from, continuing to represent and personally accept payments from terminated B & S clients. Respondent possessed specific information regarding the clients' ability to pay legal fees, as a direct result of his relationship with B & S. And Respondent used this information, coupled with B & S resources, to retain and personally accept payments from clients, without B & S' authorization, for his own benefit and not for the benefit of his employer, B & S.

While he was a full-time salaried employee at B & S, Respondent took time out of his normal B & S working hours and used B & S resources to represent clients for his personal profit. Respondent knowingly represented former B & S clients with outstanding balances owed to B & S. His efforts to

---

**11.** MD.CODE ANN., CRIM. LAW ART. § 7–104(a) provides:
Unauthorized control over property
(a) A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:
(1) intends to deprive the owner of the property;
(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
(3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

conceal his continued representation of these clients against B & S' command, and his failure to adequately separate the finances, resources and client representation of his side practice from his work at B & S, all support the conclusion that Respondent knowingly and with fraudulent intent deprived B & S of its property for his own benefit. *Attorney Grievance v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556 (2002) (finding that attorney violated Rule 8.4(b) by misappropriating payments from clients of his firm for his own use, and took steps to conceal his conduct from his firm), *Attorney Grievance v. Spery,* 371 Md. 560, 570–71, 810 A.2d 487, 493 (2002) (finding that attorney had committed theft, and that his "fraudulent, criminal conduct acting on his own behalf for his personal gain to the detriment of his partners" was grounds for disbarment).

We agree with the hearing judge that Respondent's unauthorized retention of former B & S clients, and his practice of accepting payments directly from such clients, was a criminal offense that adversely reflects on Respondent's honesty and trustworthiness to practice law. Accordingly, we overrule Respondent's exception, and affirm the legal conclusion that Respondent violated Rule 8.4(b) of the MRPC by committing theft.

### *MRPC 8.4(c)*

Respondent contends that he did not violate Rule 8.4(c) of the MRPC, because he was within his rights to maintain a side practice in addition to his work at B & S. Respondent justifies his conduct by explaining that his Of Counsel relationship with B & S permitted him to maintain a side practice, in addition to his work at B & S.

 This Court has never had occasion to define the Of Counsel relationship, however, this relationship has been discussed by the Court of Special Appeals,[12] and acknowledged in

---

12. *Homa v. Friendly Mobile Manor,* 93 Md.App. 337, 360–63, 612 A.2d 322, 334–35 (1992) (holding that a firm was not vicariously liable for an Of Counsel attorney's misconduct, because the attorney's misconduct

the Maryland Rules of Professional Conduct.[13] The Maryland State Bar Association (MSBA) Ethics Committee explained in a formal opinion that "the 'of counsel' designation denotes a close and continuing relationship with a firm, but not as a member of the firm, either as a partner or as an associate." MSBA Ethics Comm., Formal Op. 94–49 (1994).[14] The MSBA's ethics opinions clearly state that the Of Counsel attorney must at all times accurately represent his or her jurisdictional limitations, relationship to the firm, and the professional capacity in which he or she is representing a client. MSBA Ethics Comm., Formal Op. 97–2 (1996).

■ Even if we were to assume, *arguendo*, that Respondent was Of Counsel to B & S, and that his relationship with B & S permitted him to maintain a side practice, Respondent's conduct as displayed here, nonetheless, was deceptive, misleading

---

arose from his side practice, which was completely separate from and unrelated to his work as Of Counsel to the firm).

**13.** *See, e.g.* Md. Rule 1.10(c) (governing the imputed disqualification of lawyers "associated" with a firm. Comment 1 to Rule 1.10(c) states, "a lawyer is deemed associated with a firm if held out to be a partner, principal, associate, of counsel, or similar designation.").

**14.** We note that "an opinion of the Ethics Committee of the Bar Association is advisory, and is not binding on this Court." *Attorney Grievance v. Gregory,* 311 Md. 522, 531–32, 536 A.2d 646, 651 (1988). We have relied previously on such opinions, as persuasive authority, where our case law and rules are silent on a particular issue, or to shed light on a unique set of circumstances. *Attorney Grievance v. Potter,* 380 Md. 128, 159–60, 844 A.2d 367, 385–86 (2004) (citing agreement among the ABA and state bar ethics commissions that a specific act is unethical to support a finding that the respondent violated the MRPC), *Brown & Sturm v. Frederick Rd.,* 137 Md.App. 150, 177–78, 768 A.2d 62, 77 (2001) (relying on a formal opinion of the ABA Committee of Ethics and Professional Responsibility, because the MRPC was silent on the specific conduct at issue), *Attorney Grievance v. James,* 340 Md. 318, 325–27, 666 A.2d 1246, 1249–50 (1995) (citing an MSBA Ethics Committee opinion to illustrate how an attorney's conduct ran afoul of the MRPC), *Attorney Grievance v. Korotki,* 318 Md. 646, 668, 569 A.2d 1224, 1235 (1990) (stating that a disciplinary rule "operates against a background of court decisions, bar association legal ethics opinions and the traditions of a learned profession"), *Attorney Grievance v. Kemp,* 303 Md. 664, 676–78, 496 A.2d 672, 678–79 (1985) (analogizing an MSBA ethics opinion to the conduct at issue).

and unethical. The observations of the Court of Special Appeals in *Homa v. Friendly Mobile Manor* are illustrative of how an attorney Of Counsel to a firm may maintain a side practice in addition to his or her work at the firm. 93 Md.App. 337, 612 A.2d 322 (1992). In that case, the court acknowledged that the Of Counsel attorney clearly stated in all client and firm communications whether he was acting individually or in his capacity as attorney Of Counsel to the firm. *Homa* at 361, 612 A.2d at 334. The court determined that the attorney had kept his side practice entirely separate from his work as Of Counsel to the firm, and that the firm did not have any financial interest in the attorney's side practice. *Homa* at 361–63, 612 A.2d at 335. The court further pointed out that the attorney retained his side practice clients by way of his own reputation, and not as a result of his Of Counsel relationship with the firm. *Homa* at 362–63, 612 A.2d at 335.

In contrast, Respondent did not accurately represent the capacity in which he was representing certain clients, failed to separate his side practice clients and legal fees from his work at B & S, and used his relationship with B & S to retain clients for his personal benefit. Accordingly, our assumption that Respondent was permitted to maintain a side practice does not disturb the hearing judge's findings that Respondent misappropriated legal fees and used B & S resources for the benefit of his side practice, or otherwise failed to take affirmative steps to avoid the appearance that the clients he represented were not B & S clients.

In addition, Respondent contends that he did not deposit unearned sums of money into his personal account. As we stated in our response to Respondent's seventh and eleventh exceptions to the findings of fact above, Respondent has not presented any persuasive evidence to contradict the hearing judge's finding that Respondent willfully deposited, as his own funds, advanced fee payments into his personal account, to be consumed, prior to earning the fees. Accordingly, we overrule Respondent's exception, and agree with the hearing judge's conclusions that Respondent violated Rule 8.4(c) of the MRPC.

*MRPC 8.4(d)*

■ Respondent contends that he did not violate Rule 8.4(d), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice, because "the case sub judice involves a fee dispute only."

■ An attorney engages in conduct prejudicial to the administration of justice when he or she engages in conduct which erodes public confidence in the legal profession. *Attorney Grievance v. Clark,* 363 Md. 169, 183, 767 A.2d 865, 873 (2001). We have long recognized that the commingling of personal and client funds is conduct which erodes public confidence in the legal profession, in violation of MRPC 8.4(d). *See Attorney Grievance v. Drew,* 341 Md. 139, 669 A.2d 1344 (1996), *Attorney Grievance v. Kapoor,* 391 Md. 505, 520–21, 530–32, 894 A.2d 502, 511–12, 517–18 (2006) (finding that an attorney who deposited his client's funds into the attorney's personal account violated Rule 8.4(d), because his conduct was harmful to public confidence in the attorney-client relationship), *Attorney Grievance v. Maignan,* 390 Md. 287, 297–98, 888 A.2d 344, 350 (2005) (imposing an indefinite suspension where an attorney deposited client funds into his operating account and failed to even use a client trust account). In the present case, similarly, Respondent even failed to establish and use a client trust account. Moreover, Respondent did not offer any explanation for his failure to establish and maintain a trust account.

■ The intentional misappropriation of client funds is conduct which erodes public confidence in the legal profession, and such conduct also violates MRPC 8.4(d). *Attorney Grievance v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 481 (1996) (defining misappropriation as "any unauthorized use by an attorney of [a] client's funds entrusted to him [or her], whether or not temporary or for personal gain or benefit."). The failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer. *Attorney Grievance v. Bernstein,* 363 Md. 208, 229, 768 A.2d 607, 618 (2001) (stating that "the rule against misappropriation is concerned with the

risk of loss, not only the actual loss."), *Attorney Grievance v. Goldberg,* 292 Md. 650, 658, 441 A.2d 338, 342 (1982) (noting that, although an attorney's misappropriation of his client's funds did not result in an actual loss to his clients, "the public must be protected."). We agree with the conclusion that Respondent violated Rule 8.4(d) of the MRPC by misappropriating funds and failing to maintain a client trust account.

## *MRPC 8.4(a)*

Respondent contends that the hearing judge was incorrect in finding that our holding in *Attorney Grievance v. Foltz,* 411 Md. 359, 983 A.2d 434 (2009) stands for the proposition that any violation of the MRPC constitutes a violation of Rule 8.4(a).

 We have concluded previously that the violation of several rules of the MRPC may constitute a violation of Rule 8.4(a). *Foltz* at 411, 983 A.2d at 465. *Attorney Grievance v. Lara,* 418 Md. 355, 363, 14 A.3d 650, 656 (2011) (stating that "multiple violations of the Rules of Professional Conduct as determined herein also establish misconduct in violation of Rule 8.4(a)."). This Court has the ultimate authority to determine whether an attorney has violated one or more rules of the MRPC, and whether such violation also leads to a violation of Rule 8.4(a). *Attorney Grievance v. Harris,* 403 Md. 142, 156, 939 A.2d 732, 740 (2008) ("As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, our consideration is essentially *de novo*") (citing Maryland Rule 16–759(b)(1)). The hearing judge was correct in concluding that Respondent violated Rules 8.4(b)-(d), 1.15(a) of the MRPC and Rule 8.4(a). Therefore, Respondent's exceptions are overruled.

## Sanctions

We have often stated that, "[t]he primary objective of this Court, in matters of attorney discipline, is 'to protect the public, promote general and specific deterrence, and maintain the integrity of the legal profession.' *Attorney Grievance v.*

*Roberts,* 394 Md. 137, 904 A.2d 557 (2006); *Attorney Griev-ance v. Clark,* 363 Md. 169, 184, 767 A.2d 865, 873 (2001) ('The appropriate sanction depends upon the facts and circum-stances of each particular case, including consideration of any mitigating factors.')." *Attorney Grievance v. Butler,* 395 Md. 1, 11, 909 A.2d 226, 232 (2006).

We conclude from the hearing judge's findings that Respondent committed criminal acts by intentionally and de-ceptively misappropriating fees from former B & S clients that represented B & S legal fees. In addition, Respondent failed to set up and maintain a separate client trust account and willfully deposited unearned fees into his personal account, for his personal use, prior to earning the fees. All of the above acts and omissions violated the MRPC.

Absent compelling extenuating circumstances, inten-tional misappropriation of client funds or another's funds is deceitful and dishonest conduct, which justifies disbarment. *Attorney Grievance v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556 (2002) (holding that disbarment was proper, where attor-ney misappropriated payments from clients of his firm for his own use, and took steps to conceal his conduct from his firm). *Attorney Grievance v. Ezrin,* 312 Md. 603, 541 A.2d 966 (1988) (holding that disbarment of an attorney who misappropriated funds from his law firm was proper, despite a finding that the attorney felt remorse and made restitution to the firm), *Attor-ney Grievance v. Zakroff,* 387 Md. 603, 648, 876 A.2d 664, 691 (2005) (holding that, where the attorney engaged in intentional dishonesty and misappropriation of client funds, his depression did not amount to a compelling extenuating circumstance to justify a lesser sanction, and disbarment was proper), *Attor-ney Grievance v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001). In *Vanderlinde,* we held that, "in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compel-ling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of

the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC." *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485.

Respondent has not presented adequate mitigating or extenuating circumstances to justify a lesser sanction. The hearing judge made no findings that would in any way indicate that Respondent suffered from any mental or physical health conditions at the time of his misconduct. Although the hearing judge found several mitigating factors, those findings do not amount to extenuating circumstances that would warrant a sanction less than disbarment. We conclude from the hearing judge's findings that Respondent willfully and knowingly misappropriated funds and deceived both B & S and the clients involved. Under the circumstances, the appropriate sanction is disbarment. Respondent's disbarment is effective 30 days after the effective date of this order.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–515(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MICHAEL ROBERT CARITHERS, JR.**