872 A.2d 720

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Wayne M. MITCHELL.**

**Misc. Docket AG No. 10, Sept. Term, 2004.**

Court of Appeals of Maryland.

April 15, 2005.

</div>

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Wayne Maurice Mitchell, Gaithersburg, for respondent.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, specially assigned) JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland (the "Commission"), through Bar Counsel and pursuant to Mary-

land Rule 16–751,[1] as a result of two complaints received with respect to Wayne M. Mitchell, the respondent, filed against him a Petition for Disciplinary or Remedial Action. In that petition, it was alleged that the respondent violated Rules 1.1 (Competence);[2] 1.3 (Diligence);[3] 1.4 (Communication);[4] 1.15 (Safekeeping Property);[5] 5.4 (Professional Independence of a

1. Maryland Rule 16–751, as relevant, provides:

   "(a) *Commencement of disciplinary or remedial action.*
   (1) *Upon approval of the Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.1 *Competence* A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

4. Rule 1.4 provides:

   "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Maryland Rule 1.15 provides, as relevant:

   "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

Lawyer); [6] 5.5 (Unauthorized Practice of Law); [7] 7.1 (Communications Concerning a Lawyer's services); [8] 7.5 (Firm Names and Letterheads); [9] 8.1 (Bar Admission and Disciplinary Mat-

---

**6.** Rule 5.4 provides:

"(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that: (1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons; (2) a lawyer who purchases the practice of a lawyer who is deceased or disabled or who has disappeared may pursuant to the provisions of Rule 1.17, pay the purchase price to the estate or representative of the lawyer. (3) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and (4) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

"(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

"(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services. (d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:

"(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) a nonlawyer is a corporate director or officer thereof; or (3) a nonlawyer has the right to direct or control the professional judgment of a lawyer."

**7.** Rule 5.5(b) prohibits a lawyer from "assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

**8.** Rule 7.1 provides, as relevant:

"A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

"(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading...."

**9.** Rule 7.5 provides, as pertinent:

"(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1."

ters); [10] and 8.4 (Misconduct),[11] of the Rules of Professional Conduct, Appendix: Rules of Professional Conduct of the Maryland Rules, *see* Maryland Rule 16–812, Maryland Rules 16–603 (Duty to Maintain Account) [12] and 16–604 (Trust Account–Required Deposit) [13] and Maryland Code (1989, 2000

---

**10.** Rule 8.1 *Bar Admission and Disciplinary Matters,* provide in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**11.** Rule 8.4 states, in pertinent part:

"It is professional misconduct for a lawyer to:

\* \* \*

"(d) engage in conduct that is prejudicial to the administration of justice."

**12.** Maryland Rule 16–603 provides:

"An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person."

**13.** Maryland Rule 16–604 provides:

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

Replacement Volume) § 10–306 [14] of the Business Occupations and Professions Article.

We referred the matter, pursuant to Rule 16–752(a),[15] to the Honorable Durke G. Thompson of the Circuit Court for Montgomery County, for hearing pursuant to Rule 16–757(a).[16] After conducting a hearing, the hearing judge issued Findings Of Fact And Conclusions Of Law, making findings of fact and drawing conclusions of law in accordance with Maryland Rule 16–757(c),[17] as follows:

---

**14.** Section 10–306. *Limitation on use of trust funds* A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**15.** Rule 16–752(a) provides:
"(a) *Order.* Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**16.** Maryland Rule 16–757(a) provides:
"(a) *Generally.* The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action."

**17.** Maryland rule 16–757(c) provides:
"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

"Upon the testimony heard and the exhibits admitted, this Court, by clear and convincing evidence, makes the following findings of fact:

"1.   The Respondent was admitted to practice in Maryland in 1999.

### The Adeyosoye Matter

"2.   The Respondent undertook the representation of Olusolape Michelle Adeyosoye in connection with her personal injury automobile accident claim arising from an accident occurring on July 3, 2001.

"3.   In January 2002, the Respondent settled the Adeyosoye claim with the defendant, USA Truck for $3,547.28. On January 29, 2002, at the behest of the Respondent, Adeyosoye executed the release of all claims. The Respondent, by letter dated January 30, 2002 to USA Truck, confirmed and accepted the offer of settlement in the above amount.

"4.   After January 29, 2002, Adeyosoye spoke to the Respondent on several occasions by telephone. The calls from Adeyosoye were for the purpose of checking the status of the settlement. Not only did the Respondent fail to advise that the settlement proceeds check had been received and deposited, but the Respondent falsely advised Adeyosope that the proceeds check had not been received and that it might become necessary to go to court to resolve the matter.

"5.   That at all times pertinent to this matter, the Respondent did not maintain a trust or escrow account and testified that he was unaware that he needed to have such an account.

"6.   The Respondent, in fact, had received the proceeds check and had deposited the check in his law firm's operating account on or about February 12, 2002. The deposited check required endorsement by Adeyosoye. Ms. Adeyosoye denied endorsing any check for deposit and this Court accepts the testimony of Ms. Adeyosoye

as fully credible. At the time of the check deposit, both Alma Lopez–Martin and Scott, partners of the Respondent, had left the firm. The Respondent or someone acting at his direction endorsed and deposited the proceeds check in the operating account. The Respondent denies forging Adeyosoye's name to the check and generally denies stealing the money. Respondent suggests that if the endorsement was false, it was the work of one Rodney Lee, who was a long time friend of the Respondent who was helping the Respondent with office matters.

"7. Thereafter, the Respondent appropriated the funds that had been deposited, for his personal or business purposes, including the purchase of a motor vehicle.

"8. Adeyosoye never received any monies from the Respondent or the law firm.

"9. A[d]eyosoye eventually contacted USA Truck and learned that a check had been sent to the Respondent and negotiated through a bank. Eventually Adeyosoye made a claim against USA Truck and the bank and settled the matter.

"10. The Respondent moved his office and changed his phone number and never informed Adeyosoye of the truth of the matter.

"11. When contacted by Bar Counsel, Respondent repeatedly gave false and misleading statements about the matter, claiming that Adeyosoye['s] assertions were 'preposterous and clear attempts on her behalf to extort or otherwise secure monies from [the Respondent] not due her.' The Respondent further claimed that neither he nor anyone in his office had forged Ms. Adeyosoye's signature on the proceeds check and that he "ensured" that the check was signed by the client. All of these statements repeatedly made to Bar Counsel were false and completely contrary to the evidence before this Court.

"12. The Respondent was unable to produce any documentation or files on the Adeyosoye matter.

*Ayala Matter*

"13. In March 2001, Carla V. Ayala, an immigrant from Bolivia working as a dental assistant, contacted Alma Lopez–Mitchell at the Respondent's office, for the purpose of having an attorney represent her in connection with an immigration matter. Lopez–Mitchell was the Respondent's wife. Lopez–Mitchell was a law graduate, but was not admitted to the bar.

"14. Ayala contacted Lopez–Mitchell because Lopez–Mitchell was a patient of the dental practice where Ayala was employed. Ayala had been given a business card by Lopez–Mitchell. The business card shows Lopez–Mitchell's name followed by "J.D." and the Respondent's name followed by "Esq.". Ayala believed that Lopez–Mitchell was an attorney who was going to represent her.

"15. Ayala made an appointment to meet with Lopez–Mitchell. Ayala decided to go to Lopez–Mitchell because Lopez–Mitchell was fluent in Spanish. At the appointed time, she came to the Respondent's law office where she discussed the change of her immigration status with Lopez–Mitchell in her separate office and presented her with paperwork from Bolivia. While at the office, Ayala signed a contract with Lopez–Mitchell, which bore no other signatures. Ayala was never told that Lopez–Mitchell was not an attorney.

"16. Ayala paid a total fee of $3,000.00 by making monthly payments of $500.00. Her payments were timely made. She was told the immigration matter would be completed in one year.

"17. Due to a lack of progress in her matter, Ayala called the office on several occasions and was advised by Lopez–Mitchell that she was working on the matter.

Ayala wanted to see the paperwork that was being prepared.

"18. Ayala eventually came to the office and met with the Respondent in early 2001. The Respondent advised her that Lopez–Mitchell was no longer employed with the firm. Ayala asked for her paperwork and Respondent promised to gather it and send it to Ayala.

"19. When she did not receive the promised paperwork, Ayala called the Respondent's office several times a month. She did not receive any return calls and eventually no one answered the phone. Ayala then went to the location of Respondent's office and found that it was closed.

"20. Ayala located the Respondent at a Lanham, Maryland address in 2002. She went twice to the location and both times did not find anyone at the office and subsequently left a note under the door. Ayala wanted to obtain a receipt for the fee payments she had made. As a result, Ayala finally reached the Respondent who agreed to meet with her.

"21. At their meeting, Ayala was told by the Respondent that the U.S. Immigration and Naturalization was intending to close her case without action. Ayala states [that] Respondent told her the U.S. Department of Labor was to blame for the delays. Thereafter, Ayala had no further contact with the Respondent until after disciplinary proceedings had been initiated. Respondent testified that he does not remember this meeting and says he was not even in Lanham at that time.

"22. Ayala's signature appears on some of the immigration paperwork, but Ayala testified that it was not signed by her and bears an incorrect address. Ayala's testimony is fully credible. Respondent acknowledged that Ayala was not properly represented and many mistakes were made and that there was a lack of communication.

*Firm Ownership and Management*

"23.  The Respondent testified that his law firm was created on January 1, 2001 under the name of Lopez, Mitchell & Scott, L.L.C. The Respondent did the necessary legal work to create the limited liability corporation. He and Lopez–Mitchell controlled two-thirds of the firm's equity. At the time of the creation of the firm, Lopez–Mitchell was not an attorney nor is there any evidence that she has ever been an attorney, only a law school graduate. At the time of the hearing before this Court, the Respondent was unable to produce any of the organizing documents for the firm.

"24.  Scott left the firm in September or October 2001. The Respondent's wife stopped working at the firm in March 2001.

"25.  The only income to the firm came from legal fees. Lopez–Mitchell shared in the division of the fees with the Respondent and Scott. The Respondent did not understand at the time of the creation of the firm that non-lawyers could not own an equity interest in the firm. Instead, the Respondent felt that Lopez–Mitchell was working in the same 'industry' and that the ownership prohibition applied to ownership combinations involving persons of other professions. The Respondent did not consult the Rules of Professional Conduct prior to the creation of the law firm. The Respondent states that the business cards originally did not have anything following Lopez–Mitchell's name, but were changed to include the 'J.D.' designation to protect Lopez–Mitchell from liability.

*"Other Matters*

"26.  The Respondent and Lopez–Mitchell experienced marital difficulties and separated in March 2001. They are currently reconciled.

"27.  The Respondent acknowledged that he has suffered from substance abuse in the past, but asserts he is dealing with the issue at present.

"... *Conclusions of Law*

"What undoubtedly commenced as a hopeful enterprise by the Respondent and others, was doomed from the start when viewed from ethical considerations.  The actual operation of the law firm for which the Respondent was responsible further violated the Rules of Professional Conduct, which was followed by a period of inaction and avoidance of responsibility to clients and the profession.

"*Maryland Rules for Professional Conduct 5.4(a) and (d)*

"Respondent erred when he agreed with a non-lawyer to form a law firm and to share fees with the non-lawyer.  The excuse for the violation, that of ignorance of the limitation of the participation in this manner with non-lawyers, is to be viewed with the participation of Lopez–Mitchell in the operation of the firm as well in the context of other rule violations. The organizational structure of the firm, which was created by the Respondent, constitutes a·violation of Rules 5.4(a) and (d) of the Maryland Rules of Professional Conduct.

"The Petitioner alleges the sharing of legal fees by Lopez–Mitchell and the Respondent, but the specific fees were not identified.  The proof in this case is derivative of the co-ownership, but there was no evidence that any fee was divided between an attorney and a non-attorney.  This is due in no small measure to the paucity of records retained and produced by the Respondent.  It is the finding by this Court that Petitioner has not sustained its burden on this specific allegation.

"*Maryland Rules of Professional Conduct 7.1 and 8.4(c)*

"The Petitioner alleges that by permitting Lopez–Mitchell to hold herself out as an attorney, the Petitioner was a part of making false and misleading communications about the legal services being rendered.  In this case, the Respondent's culpa-

bility lies with permitting Lopez–Mitchell to relate to the client, Ms. Ayala, without an attorney being present and by implying to clients that Ms. Lopez–Mitchell was an attorney. The proof in the case is that Lopez–Mitchell conducted the Ayala legal matter until she left the firm in March 2001. This included giving the firm business card to Ayala, with Lopez–Mitchell's name without any indication of status, and later using a card indicating 'J.D.' Lopez–Mitchell did not testify either by deposition or directly in court. However, there was no rebuttal to Ms. Ayala's testimony that until Lopez–Mitchell left the firm, she was the only person with whom Ayala had contact, the person who gave advice and handled conferences in her own office within the firm location, set the fee, and executed the retainer agreement. The evidence before the Court is clear and convincing that the Respondent knew, and in fact, sponsored the arrangement undertaken in the Ayala case. Only when Lopez–Mitchell left, did the Respondent become involved in the matter, [in] which [his] involvement was also problematic. The use of the business card, the retainer agreement and the fee setting was a violation of Rules 7.1 and 8.4(c).

### "Maryland Rules 16–603 and 16–604; Maryland Rules of Professional Conduct 1.15(a) and (b)

"The Adeyosoye matter presents glaring examples of misconduct. By his own admission, the Respondent acknowledged that he failed to establish and maintain an attorney trust or escrow account. When the proceeds payable in settlement for the USA Truck case were sent to the Respondent, they were deposited in the firm's operating account. The failure to establish a proper trust account and the failure to use such an account as the depository for the recovery proceeds constitutes violations of Maryland Rules 16–603 and 16–604. The Respondent's actions also constitute a violation of Maryland Rule of Professional Conduct 1.15(a) and (b) by the failure to safeguard the property of others entrusted to the Respondent and the failure by the Respondent to notify Ms. Adeyosoye of the receipt of the settlement proceeds.

*"Maryland Rules of Professional Conduct
1.3 and 1.4(a), and 8.4(a) and (c)*

"The Respondent could not have been less diligent in the Adeyosoye matter. Not only did the Respondent not inform his client properly as stated above, he closed his firm's location, took the totality of the assets, and did not give any notice or indication as to where he could be found. The fact that Ms. Adeyosoye was not further damaged in this matter is due solely to Ms. Adeyosoye and her resourcefulness in eventually holding others to account for her loss. None of that redounds to the Respondent's credit whose actions made a bad situation worse. The proof was irrefutable that the Respondent took the proceeds for his own use, thereby denying to Adeyosoye that which was justly hers. In short, the Respondent stole his client's money.

"The Respondent's actions are clear violations of Maryland Rules of Professional Conduct 1.3 and 1.4(a). The theft constitutes a violation of Maryland Rule 8.4(a) and (c).

*"Maryland Rules of Professional Conduct 8.1 and 8.4(a)*

"During the course of the investigation and at the time of trial, the Respondent asserted that the complaint and testimony of Ms. Adeyosoye was preposterous and false. He even went so far as to suggest that Ms. Adeyosoye was perpetrating a scam to obtain double recovery and that she was attempting to extort funds from the Respondent when she knew she had been paid. These statements were made when the Respondent had full knowledge that he had taken the monies for his own use in buying a motor vehicle, had not properly accounted to the client, and tried to avoid any responsibility in the matter. The Respondent's alternative theory is that a nonlawyer, childhood friend who was helping out in the office probably was responsible for the mishandling of the monies. Given the powerful proof elicited by Bar Counsel, such statements are pure nonsense and were made out of desperation and to obfuscate the investigation and the trial. Accordingly, the Respondent violated Maryland Rules of Disciplinary Conduct 8.1 and 8.4(a).

*Mitigation*

"No evidence in mitigation was offered by the Respondent in explanation of his acts other than ignorance and confusion. In fact, the Respondent denied many of the allegations made against him. However, it is the belief of this Court that the Respondent was then and may still be suffering from the effects of substance abuse. The evidence that this circumstance might be involved came to light only with the Court's specific questions and was not volunteered. Because there was so little evidence on this point other than a candid admission by the Respondent in his testimony, not much more can be said on the point."

The petitioner has filed a Recommendation for Sanction, in which it urges disbarment as the appropriate sanction.[18] To support that recommendation, the petitioner emphasizes that the hearing court "determined that there was clear and convincing evidence that the Respondent stole his client's money," that "[t]he proof was irrefutable that the Respondent took proceeds of his client's case for his own use, thereby denying his client that which was justly hers," and that the respondent made misrepresentations to Bar Counsel in an effort to thwart the investigation. Thus, it submits:

"This Court has stated that 'absent compelling extenuating circumstances, misappropriation by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment." *Attorney Grievance Commission v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556 (2002). *See Attorney Grievance Commission v. Herman,* 380 Md. 378, 400–401, 844 A.2d 1181, 1195 (2004); *Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 413–14, 418–19, 773 A.2d 463, 485, 488 (2001) (disbarment should be the

---

18. Although appearing for oral argument before this court, the respondent filed no written exceptions to the hearing court's findings of fact or conclusions of law. Accordingly, pursuant to Maryland Rule 16–759(b)(2)(a), for the purpose of determining the appropriate sanction, we shall deem the findings of fact as established. Moreover, we agree with the hearing court's conclusions of law, having conducted, as we are required to do, a *de novo* review of those conclusions.

sanction for intentional dishonest conduct absent compelling extenuating circumstances). It is readily apparent that the Respondent's misconduct is not mitigated[.] Opinion at 11. Petitioner's recommendation is therefore entirely warranted."

We agree. The respondent, consequently, is ordered disbarred.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715.C., FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WAYNE M. MITCHELL.*