43 A.3d 988

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Bruce Edward GOODMAN.

Misc. Docket AG No. 46, Sept. Term, 2008.

Court of Appeals of Maryland.

May 1, 2012.

116

James P. Botluk, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Bruce Edward Goodman, Upper Marlboro, MD, for respondent.

**120**

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS, and BARBERA, JJ.

BELL, C.J.

On December 9, 2008, the Attorney Grievance Commission of Maryland ("AGC"), the petitioner, acting through Bar Counsel, filed, against Bruce E. Goodman, the respondent, a Petition for Disciplinary or Remedial Action, which alleged that the respondent violated the following: Maryland Rules of Professional Conduct ("MRPC") 1.3 Diligence,[1] 1.15(a), (d) and (e) Safekeeping Property,[2] and 8.4(b), (c), and (d) Misconduct,[3]

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; he did not participate in the decision and adoption of this opinion.

1. Maryland Rule of Professional Conduct ("MRPC") 1.3 provides, "A Lawyer shall act with reasonable diligence and promptness in representing a client."

2. MRPC 1.15 provides in pertinent part:
"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
\* \* \*
"(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property."
"(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute."

Maryland Rules 16–603 Duty to Maintain Account,[4] 16–604 Trust Account–Required Deposits,[5] and 16–609(a) Prohibited Transactions;[6] and the Maryland Code (1989, 2010 Repl.Vol., 2011 Supp.) Business Occupations and Professions Article § 10–306.[7] These allegations stem from Goodman's failure to maintain a client trust account, his deposit of client settlement

---

**3.** MRPC 8.4, provides in pertinent part, "It is professional misconduct for a lawyer to . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice . . .;

**4.** Maryland Rule 16–603 provides:

"An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person."

**5.** Maryland rule 16–604 provides:

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

**6.** Maryland Rule 16–609(a) provides:

"Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose."

**7.** Maryland Code, Business Professions and Occupations Article § 10–306 provides, "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

funds into his operating account without authorization, and his failure to pay two clients' medical bills (which remain outstanding), despite Goodman's prior agreement to pay those bills from any monetary recoveries obtained for his clients.

## I. FACTS

Pursuant to Maryland Rule 16–752(a),[8] we referred the case to the Honorable Melanie M. Shaw Geter of the Circuit Court for Prince George's County, to conduct an evidentiary hearing and to make findings of fact and draw conclusions of law, pursuant to Maryland Rule 16–757(c).[9] The hearing was held on June 30, 2009. The respondent appeared at, and participated in, the hearing, after which the hearing judge, using the clear and convincing evidence standard, made findings of fact and drew conclusions of law, which we summarize, as follows:

In November 2003, Nellie Spearman ("Spearman") and Noah Silver ("Silver") sustained injuries in an automobile accident. They retained the respondent to prosecute personal injury claims on their behalf. On November 14, 2003, Spearman and Silver executed authorizations for the respondent to pay, from the proceeds of any recovery, the Upper Marlboro Physical Therapy and Wellness Center ("UMPTWC"), which

---

8. Rule 16–752(a) provides:

"Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:

"Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

provided health care for their injuries. The respondent sent a letter, dated July 28, 2004, to the UMPTWC, requesting that the UMPTWC reduce the medical bills for Spearman's and Silver's treatments. The UMPTWC's billing agency, Premier Billing, agreed to reduce each client's bill by $400.00. At some point thereafter, the respondent disbursed the settlement funds due to Spearman and Silver; however, the UMPTWC never received payment for the agreed-upon sums.

In 2006, Spearman and Silver realized that the respondent had not paid their medical bills. Spearman received several letters from a collection agency regarding her outstanding medical bill owed to the UMPTWC. After she was unable to reach the respondent by telephone, Spearman went to his office to inquire about the unpaid medical bill. The respondent's response to her inquiry was that he was "fairly sure that he had paid the bill." Silver also inquired of the respondent, several times over a two-month period, about his outstanding bill with the UMPTWC. At the hearing before Judge Shaw Geter, Silver testified, "the respondent thought he had paid it[;] he was not sure," and that the respondent was still checking into the unpaid bill. Both Spearman and Silver testified that the respondent assured them that "he would take care of the matter." Approximately two years later, in 2008, Spearman received another collection agency letter regarding the UMPTWC bill, which prompted Spearman and Silver to file a complaint with the AGC about the respondent. The UMPTWC medical bills remained unpaid as of the hearing.

The respondent, admitted to practice in Maryland in June 1989, maintains (since 2002) a solo general practice with an office in Upper Marlboro, Maryland. Although the respondent corroborated Spearman's and Silver's testimony, he continued to maintain that he "believes that he paid the bill." The respondent also stated that he does not maintain a client trust account, that he placed Spearman's and Silver's settlement proceeds into his operating account, and that he had no financial records because "they were lost during [his] divorce proceedings."

The hearing judge concluded, by clear and convincing evidence, *see* Md. Rule 16–757(b),[10] that the respondent violated the Maryland Rules of Professional Conduct, Maryland Rules, and Maryland Code, Business Occupations and Professions Article Section as charged by the AGC in its petition.

## II. STANDARD OF REVIEW

" 'This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland.' " *Att'y Griev. Comm'n v. Stern*, 419 Md. 525, 556, 19 A.3d 904, 925 (2011) (quoting *Att'y Griev. Comm'n v. Nwadike*, 416 Md. 180, 192, 6 A.3d 287, 294 (2010)). In instances where neither the petitioner nor the respondent files exceptions to the findings of fact, as is the case here, this Court "may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any," which we shall do. Md. Rule 16–759(b)(2)(A). This Court reviews de novo the hearing judge's conclusions of law. Md. Rule 16–759(b)(1); *see also Stern*, 419 Md. at 556, 19 A.3d at 925.

## III. DISCUSSION

Based upon the findings of fact, we conclude that the respondent violated MRPC 1.3, 1.15(a), (d), and (e), and 8.4(b), (c) and (d); Maryland Rules 16–603, 16–604, and 16–609(a); and the Maryland Code, Business Occupations and Professions Article § 10–306. Our analysis is straightforward; the respondent admitted that he does not maintain a client trust account and that he deposited client settlement funds into his operating account without authorization. This, our precedents establish, plainly, is unacceptable attorney conduct. Further, the respondent "lost" his practice's financial records (such as they may have been) and then failed to retrieve bank records

---

10. Maryland Rule 16–757(b) provides, "Burden of proof. The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

that he claimed would refute Premier Billing's claims that his clients' medical bills remained unpaid.

### A. MRPC 1.3 Diligence

■■■ The respondent's failure to pay promptly his clients' medical bills violated MRPC 1.3. An attorney who agrees to pay client medical bills from recoveries in connection with his/her representation, and fails to do so in a timely manner after receipt of settlement or judgment funds, acts without reasonable diligence and promptness. *Att'y Griev. Comm'n v. Roberts,* 394 Md. 137, 163–64, 904 A.2d 557, 573 (2006) (holding that attorney who delayed settlement disbursement to client and client medical providers for approximately four months violated MRPC 1.3); *Att'y Griev. Comm'n v. Zuckerman,* 386 Md. 341, 357–58, 872 A.2d 693, 703 (2005) (holding that attorney who was several years late in paying client's medical bills violated MRPC 1.3); *see also Att'y Griev. Comm'n v. Singleton,* 311 Md. 1, 13, 532 A.2d 157, 163 (1987) (holding that attorney who failed to pay client medical bills by time of hearing violated former Md. Disciplinary Rule 6–101, Failing to Act Competently). Here, the hearing judge found that the respondent did not pay the UMPTWC medical bills and that the bills remain unpaid, a clear violation of MRPC 1.3.

### B. MRPC 1.15

■ The respondent failed to maintain a client trust account, in violation of MRPC 1.15(a). This Rule mandates that attorneys keep client or third-person funds in a separate trust account. An attorney's failure to maintain such a separate account violates Rule 1.15(a). *Att'y Griev. Comm'n v. Mitchell,* 386 Md. 386, 398, 872 A.2d 720, 727 (2005) (stating that an attorney's failure to establish and maintain an attorney trust or escrow account constituted a violation of MRPC 1.15(a)); *Att'y Griev. Comm'n v. Prichard,* 386 Md. 238, 247, 872 A.2d 81, 86 (2005) (stating that respondent violated MRPC 1.15 by "failing to hold property of clients or third persons that was in his possession in connection with a representation separate from his own property, including monetary funds which were

not kept in a separate account"). In *Prichard,* the attorney acknowledged that he failed to maintain an escrow account and deposited settlement proceeds into his firm's operating account, 386 Md. at 245, 872 A.2d at 85, as did the respondent here. The respondent violated MRPC 1.15(a).

■ The hearing judge concluded that the respondent did not pay his clients' medical bills after receiving their settlement funds, which violated MRPC 1.15(d)'s mandate to do so promptly. "[A]n attorney who fails to notify the lender of his receipt of a settlement check and does not pay a client's debts from settlement funds, violates Rule 1.15(b)," which became present MRPC 1.15(d), through a Rules Order filed in 2005. *Zuckerman,* 386 Md. at 370, 872 A.2d at 710 (citing *Att'y Griev. Comm'n v. Stolarz,* 379 Md. 387, 399–400, 842 A.2d 42, 49 (2004)). In *Roberts,* the attorney withheld payment from settlement funds to his client's medical providers for four months, which constituted a violation of then MRPC 1.15(b). 394 Md. at 163–64, 904 A.2d at 572–73. The respondent failed entirely to pay his clients' medical providers from settlement funds, as agreed to previously. The respondent stated that he believed that he paid the medical bills. Even if he failed to pay them accidently, an inadvertent failure to disburse settlement funds to a third party violates MRPC 1.15(d). *Stolarz,* 379 Md. at 400–01, 842 A.2d at 49. Therefore, the respondent's failure to pay his clients' medical bills, whether accidentally or intentionally, violates MRPC 1.15(d).

The respondent's failure to pay the outstanding medical bills promptly after negotiating the reduced amount owed violates MRPC 1.15(e). MRPC 1.15(e) requires an attorney, who, in the course of representing a client, possesses property in which two or more persons claim an interest, to distribute promptly all portions of that property as to which the interests are not in dispute. *Att'y Griev. Comm'n v. Kendrick,* 403 Md. 489, 503, 943 A.2d 1173, 1180 (2008). The respondent negotiated a $400.00 reduction in both Spearman's and Silver's medical bills and then dispersed to Spearman and Silver their shares of the settlement funds regarding their personal injury

claims, which indicates that there no longer was a dispute as to the money owed to the UMPTWC. *See Roberts,* 394 Md. at 150, 904 A.2d at 564–65. His subsequent failure to distribute promptly to the UMPTWC its share of the settlement proceeds violated MRPC 1.15(e).

### C. Maryland Rules 16–603 and 16–604

■ The same reasons that the respondent violated MRPC 1.15(a)—he acknowledged that he did not maintain a client trust account and deposited the clients' funds, in excess of his earned fees, into his operating account—causes us to conclude that the respondent violated Maryland Rule 16–604. Further, by accepting funds despite not having a client trust account, the respondent violated also Maryland Rule 16–603.

### D. Maryland Rule 16–609(a) and Maryland Code, Business Occupations and Professions Article § 10–306

■ Both Rules 16–609(a) and § 10–306 prohibit an attorney's unauthorized use of client trust funds; the former couches the prohibition as "any unauthorized purpose" and the latter couches it as "any purpose other than the purpose for which the trust money is entrusted to the lawyer." The respondent did not produce or maintain any relevant financial records regarding his operating account, yet claimed to have disbursed payment to the UMPTWC. Regarding a similar situation, this Court said,

> "Because of the specific, strict, and affirmative recordkeeping obligations placed on attorneys in the maintenance and operation of their escrow accounts containing the trust funds of clients and third parties, the failure to maintain those records to document an attorney's claim of how and when those funds were received and expended, as well as an attorney's claimed authorization to make disbursements, may be disbelieved and an adverse inference drawn where such required corroboration is not forthcoming."

*Nwadike,* 416 Md. at 198, 6 A.3d at 297.

When the respondent failed to produce financial records to corroborate his claim that he paid his clients' medical bills—

despite his specific, strict, and affirmative record-keeping obligations—he used those funds for an unauthorized purpose in violation of Rule 16–609(a) and § 10–306. *See Roberts,* 394 Md. at 155–56, 904 A.2d at 568 (holding that the logical conclusion, when the attorney deposits client settlement proceeds into his operating account and cannot account for those proceeds, is that the attorney used client funds). Even when faced with the prospect of disciplinary charges, the respondent elected not to pay $400.00 to have his bank reproduce copies of the financial records of his operating account. The respondent's testimony in that regard was unworthy of belief, as the hearing judge implicitly found.

### E. MRPC 8.4(b), (c), and (d)

An act prejudicial to the administration of justice is one that "tends to bring the legal profession into disrepute." *Att'y Griev. Comm'n v. Rose,* 391 Md. 101, 111, 892 A.2d 469, 475 (2006). We have noted, on all too many occasions, that the commingling of personal and client funds, including the failure to maintain a separate trust account, is prejudicial to the administration of justice. *Att'y Griev. Comm'n v. Carithers,* 421 Md. 28, 56, 25 A.3d 181, 197–98 (2011) (citing *Att'y Griev. Comm'n v. Clark,* 363 Md. 169, 183, 767 A.2d 865, 873 (2001)) (concluding that misappropriation of client funds and failure to maintain client trust account violated MRPC 8.4(d)).

The hearing judge concluded that the respondent's conduct violated MRPC 8.4(d). We agree. The respondent acknowledged that he did not maintain a separate client trust account and commingled client settlement proceeds with his operating account, a clear violation of MRPC 8.4(d). *Carithers,* 421 Md. at 56–57, 25 A.3d at 198; *Zuckerman,* 386 Md. at 374–75, 872 A.2d at 713. Further, the respondent's inexplicable failure to pay his clients' medical bills, in violation of his agreement to do so, exposed Spearman and Silver to potential lawsuits from the UMPTWC or anyone who might acquire the right to sue on debts. Such conduct erodes the public confidence in, and brings disrepute to, the legal profession and is, therefore, prejudicial to the administration of justice.

Regarding MRPC 8.4(b) and (c), the hearing judge concluded that the respondent violated these rules also. Although the hearing judge did not explicate her rationale for these conclusions, in this case and under the circumstances, we engage the presumption that hearing judges know the law and correctly apply it. *Att'y Griev. Comm'n v. Jeter,* 365 Md. 279, 288, 778 A.2d 390, 395 (2001); *see also Att'y Griev. Comm'n v. Keiner,* 421 Md. 492, 508, 27 A.3d 153, 163 (2011) (stating that hearing judge's failure to mention certain facts does not mean he or she failed to consider those facts, and does not warrant the grant of an exception). Based on the unexcepted-to findings of fact, we agree that the respondent's conduct violated MRPC 8.4(b) and (c).

MRPC 8.4(c) proscribes attorney conduct that is dishonest, fraudulent, deceitful, or a misrepresentation. The respondent never paid his clients' medical bills, despite agreeing to do so; deposited the clients' settlement funds into his operating account without authorization; claimed he had paid the bills, but provided no evidence to rebut the AGC's evidence to the contrary; and assured both clients that he would take care of the matter, which he did not. The respondent's conduct violated MRPC 8.4(c).

 Further, misappropriation of client or third-party funds violates MRPC 8.4(c). *Roberts,* 394 Md. at 164, 904 A.2d at 573; *Att'y Griev. Comm'n v. Kapoor,* 391 Md. 505, 527–29, 894 A.2d 502, 515–17 (2006) (holding that attorney violated MRPC 8.4(c) by failing to deposit client fund into trust account and to pay client's medical providers); *see also Att'y Griev. Comm'n v. McCulloch,* 397 Md. 674, 683, 919 A.2d 660, 665 (2007) (holding that attorney who deposited unearned retainer into operating account and spent it on unauthorized purpose violated MRPC 8.4(c)). "Misappropriation is 'any unauthorized use by an attorney of [a] client's funds entrusted to him [or her],' whether or not temporary or for personal gain or benefit." *Att'y Griev. Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 481 (1996) (quoting *In re Harrison,* 461 A.2d 1034, 1036 (D.C.App.1983)). Further,

" 'The co-mingling of client and attorney funds always creates the potential for misappropriation, even when there is no intent to misappropriate. A misappropriation necessarily occurs whenever the attorney withdraws funds from a comingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent. It is not necessarily willful, however, or for the conscious purpose of unlawfully taking funds held in trust for another.' "

*Att'y Griev. Comm'n v. Hayes*, 367 Md. 504, 516 n. 10, 789 A.2d 119, 127 n. 10 (quoting *Att'y Griev. Comm'n v. Bernstein*, 363 Md. 208, 231, 768 A.2d 607, 619–20 (2001) (Wilner, J., dissenting)).

The respondent misappropriated his clients' settlement funds. He commingled client and personal funds and did not provide financial records to establish how the funds were spent. Despite claiming to have paid the medical bills, the respondent could not provide any evidence to refute the AGC's claims that the medical bills were unpaid. A permissible inference is that the respondent misappropriated funds that belonged rightfully to the creditors, which left an insufficient balance to pay his clients' medical bills. *See Nwadike*, 416 Md. at 197–98, 6 A.3d at 297; *Roberts*, 394 Md. at 156–57, 904 A.2d at 568–69.

Misappropriation comes in three degrees of culpability; intentional, knowing, and negligent. *Glenn*, 341 Md. at 485, 671 A.2d at 481. A knowing misappropriation is "the taking by a lawyer of 'a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking.' " *Id.* (quoting *In re Roth*, 140 N.J. 430, 658 A.2d 1264, 1272 (1995). Proving a knowing state of mind is difficult, but an " 'inculpatory statement' " is not required; instead, " 'circumstantial evidence can add up to the conclusion that a lawyer 'knew' or 'had to know' that client funds were being invaded.' " *Id.*, 341 Md. at 485–86, 671 A.2d at 481 (citing *In re Roth*, 658 A.2d at 1273)).

The respondent knowingly misappropriated client funds. Although he did not disclose expressly his intent by making an inculpatory statement, the sum of the circumstantial evidence demonstrates that the respondent knew he invaded his clients' funds and those of third persons. The respondent acknowledged that he did not maintain a client trust account and placed his clients' funds into his operating account. Therefore, he knew that he commingled client and personal funds and used them for purposes unauthorized by the clients. A knowing misappropriation of client funds is a violation of MRPC 8.4(c). *See Att'y Griev. Comm'n v. Webster*, 402 Md. 448, 466, 474, 937 A.2d 161, 171, 176 (2007) ("[the Court of Appeals] ha[s] consistently noted that the failure to deposit client funds into escrow accounts amounts to a violation of MRPC 8.4(c) and (d)."); *Roberts*, 394 Md. at 164, 904 A.2d at 573 (holding that attorney who misappropriated client settlement proceeds and failed to pay client medical providers violates MRPC 8.4(c)).

 Finally, the respondent violated MRPC 8.4(b). We have previously concluded that the respondent violated Maryland Code, Business Occupations and Professions Article, § 10–306 and MRPC 8.4(c). Misconduct constituting a violation of § 10–306 and rule 8.4(c) also supports a violation of MRPC 8.4(b). *Att'y Griev. Comm'n v. Nussbaum*, 401 Md. 612, 637–39, 934 A.2d 1, 15–16 (2007) ("[A] finding of 'deceit/misrepresentation' is equivalent to a finding of willfulness to support a violation of Section 10–607(b) and thereby a violation of MRPC 8.4(b)....").

## IV. SANCTION

 The primary purpose of attorney disciplinary proceedings is to protect the public and its confidence in the legal profession. *Att'y Griev. Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003) (citing *Att'y Griev. Comm'n v. Powell*, 369 Md. 462, 474, 800 A.2d 782, 789 (2002)). Protecting the public means that this Court will sanction an offending attorney at a level commensurate with the nature and gravity of

the violation(s) as well as the attorney's intent when he or she committed the violation. *Nwadike,* 416 Md. at 201, 6 A.3d at 299 (quoting *Att'y Griev. Comm'n v. Post,* 379 Md. 60, 70–71, 839 A.2d 718, 724 (2003)). The point, however, "is not to punish the lawyer or to provide a basis upon which to impose civil liability." *Stein,* 373 Md. at 537, 819 A.2d at 375 (quoting *Att'y Griev. Comm'n v. Monfried,* 368 Md. 373, 394, 794 A.2d 92, 104 (2002)). We have also said that sanctioning an offending attorney protects the public interest " 'because it demonstrates to members of the legal profession the type of conduct which will not be tolerated.' " *Id.* (quoting *Att'y Griev. Comm'n v. Mooney,* 359 Md. 56, 96, 753 A.2d 17, 38 (2000)). Therefore, disciplinary proceedings and the sanctions imposed have the goal also of "deterring other lawyers from engaging in similar conduct." *Id.* (citing *Powell,* 369 Md. at 474–75, 800 A.2d at 789).

The AGC recommends that the respondent be disbarred. The respondent responds that, if a sanction is imposed, it should be something less than disbarment, primarily because four years elapsed between the time during which he represented Silver and Spearman and when the AGC contacted him regarding his conduct.

 This Court has maintained consistently that the " '[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.' " *Roberts,* 394 Md. at 166, 904 A.2d at 574 (quoting *Att'y Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 406, 773 A.2d 463, 480 (2001)). Disbarment is the appropriate sanction for attorneys who misappropriate client funds because being entrusted with the property of others is a responsibility of the highest order, and misappropriation will not be tolerated. *Roberts,* 394 Md. at 166, 904 A.2d at 574–75 (quoting *Att'y Griev. Comm'n v. Owrutsky,* 322 Md. 334, 345, 587 A.2d 511, 516 (1991)).

 The respondent did not provide compelling extenuating circumstances that mitigate the sanction below disbar-

ment. He stated that the circumstances of his divorce caused him to lose his financial records, which were "stranded" at the house occupied by his ex-wife. The respondent's marital strife and poor record-storing practices are not extenuating circumstances mitigating the conduct. *See Att'y Griev. Comm'n v. Herman*, 380 Md. 378, 401, 844 A.2d 1181, 1195 (2004) (finding that a failing marriage and careless handling of files were not mitigating factors in attorney's various violations of the MRPC). The respondent urges also, as a mitigating factor, that he could not afford the $400.00 bank fee to obtain copies of his account records. His unwillingness to acquire and provide those records, despite facing the prospect of charges, is unavailing. The respondent shall be disbarred.[11]

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRUCE EDWARD GOODMAN.

---

**11.** In light of our decision to disbar Goodman in the present matter, Goodman's two other pending AGC cases—Attorney Grievance Commission v. Goodman, AG 12 (where he was charged with violating MRPC 1.3 Diligence, 1.4 Communication, and 1.5 Fees) and 15 (where he was charged with violating MRPC 1.1 Competence, 1.3 Diligence, 1.4 Communication, 1.5 Fees, 1.15 Safekeeping Property, 1.16 Declining or Terminating Representation, and 8.1 Bar Admission and Disciplinary Matters), September Term 2007—are dismissed.